CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JUL 19 2006

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| ROBERT DOE, et al., )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>ELAINE L. CHAO, )<br>SECRETARY OF LABOR, )<br>    Defendant. ) | Civil Action No. 2:97cv00043<br>**MEMORANDUM OPINION**<br><br>By: GLEN M. WILLIAMS<br>Senior United States District Judge |

*I. Statement of the Case*

This case is before the court on remand from the Fourth Circuit for a recalculation of the attorney's fees to be awarded to Buck Doe, pursuant to the Privacy Act of 1974, 5 U.S.C.A. § 552a(g)(4)(B), and the Equal Access to Justice Act, 28 U.S.C.A. § 2412(b), for his suit against the United States Department of Labor, ("the Department"), for its practice of listing social security numbers on black lung multi-captioned hearing notices.

*II. Background and Facts*

Plaintiffs in this action are claimants who filed for benefits under the Department's black lung program. The record shows that Robert Doe filed suit against the Secretary of Labor, ("the Secretary"), on February 13, 1997, seeking to enjoin the Department's practice of listing claimants' social security numbers on

black lung multi-captioned hearing notices. On February 18 and 19, 1997, the Secretary entered into an agreement stating that the Department would no longer disseminate social security numbers on black lung hearing notices. The court approved and signed the agreement on February 20, 1997. Later that day, six other Doe plaintiffs (Buck, Charles, Dick, Joe, Otis and Thomas) initiated six additional lawsuits in the Western District of Virginia seeking equitable relief and damages. These cases were subsequently consolidated with Robert Doe's lawsuit on June 4, 1997. Finally, in August 1997, the court granted Tays Doe leave to intervene in the suit.

In January 1998, plaintiffs filed a Motion to Show Cause seeking to hold the Secretary in contempt of court for violating the court order of February 20, 1997. The plaintiffs further filed notice of their intent to depose several administrative law judges, ("ALJ"), whose actions formed the basis of plaintiffs' contempt motion. In an order issued March 17, 1998, the court granted in part, denied in part, defendant's motion to stay discovery, defendant's motion to stay/cancel the Show Cause hearing and defendant's motion to stay the deposition of ALJ Sutton. The court stayed all other discovery pending its ruling on cross-motions for summary judgment. Finally, the court denied plaintiffs' motion to hold the Secretary in contempt.

On May 6, 1998, the court denied plaintiffs' motion to hold the Secretary in contempt after concluding she had substantially complied with its decree to stop publishing social security numbers on multi-captioned hearing notices. On June 1, 1998, the court denied plaintiffs' motion to reconsider contempt sanctions.

During the spring of 1999, the parties' cross-motions for summary judgment and plaintiffs' Motion to Certify the Litigation as a Class Action were referred to the Magistrate Judge. By Report and Recommendation dated October 29, 1999, the Magistrate recommended that plaintiffs' motions be denied. The Magistrate further recommended that summary judgment be granted in favor of the Secretary on all of the claims except for the claim of Buck Doe.

On December 8, 1999, the court referred Plaintiffs' Motion to Amend Complaint and File Affidavits in Support of Damages to the Magistrate Judge. By Report and Recommendation dated May 24, 2000, the Magistrate recommended that plaintiffs' motion be denied.

On July 24, 2000, the court denied the plaintiffs' motion for class certification and entered summary judgment for the Secretary on the claims of all plaintiffs except for the claim of Buck Doe. The court granted summary judgment in Buck Doe's favor and awarded $1,000.00 in damages. Plaintiffs appealed the ruling granting summary judgment to the Secretary to the Fourth Circuit and the Secretary cross-appealed the court's award of summary judgment to Buck Doe. In the fall of 2000, while the appeals were still pending, the plaintiffs filed petitions for attorneys' fees under 28 U.S.C.A. § 2412(b) and 5 U.S.C.A § 552a(g)(4), which the Secretary opposed.

The Fourth Circuit entered judgment on September 20, 2002, affirming the court's grant of summary judgment in favor of the Secretary and reversing the court's grant of summary judgment in favor of Buck Doe. The Court denied rehearing on

November 15 2002, and, when the 90-day period for seeking certiorari passed on February 13, 2003, the judgment against all plaintiffs other than Buck Doe became final. Buck Doe petitioned for a writ of certiorari, which the Supreme Court granted. The Supreme Court affirmed the Fourth Circuit's ruling in favor of the Secretary on February 24, 2004. Pursuant to remand from the Supreme Court, this court entered judgment against Buck Doe on his claim for monetary damages on April 27, 2004.

By Memorandum Opinion and Order entered November 10, 2004, this court held that actual damages are not necessary to obtain an award of attorney's fees under the Act and awarded Wolfe, Williams & Rutherford $161.40 in expenses and $39,312.50 in attorney's fees, Attorney Kilgore $439.64 in expenses and $13,457.50 in attorney's fees and Mottern, Fisher & Goldman, P.C., $47.18 in expenses and $4,102.75 in attorney's fees for their prosecution of Buck Doe's claim against the Department. *Doe v. Chao*, 346 F. Supp. 2d 840, 850-51 (W.D. Va. 2004).

On January 10, 2005, the Secretary filed her notice of appeal with the United States Court of Appeals for the Fourth Circuit. On appeal, the Fourth Circuit affirmed this court's conclusion that actual damages are not necessary to obtain an award of attorney's fees under the Act. *Doe v. Chao*, 435 F.3d 492, 493 (4th Cir. 2006). However, the Fourth Circuit found that this court abused its discretion in its award of attorneys' fees by failing to give primary consideration to the amount of damages awarded as compared to the amount sought, in light of the fact that Buck Doe recovered no monetary damages despite damages being the primary purpose of his suit. *Doe*, 435 F.3d at 505-06. The Fourth Circuit remanded the case back to this court for a recalculation of the amount of attorneys' fees in accordance with its

opinion. *Doe*, 435 F.3d at 493. The court now must recalculate Buck Doe's award of attorneys' fees.

### III. Analysis

The establishment of reasonable attorney's fees is primarily within the discretion of the district court. *See Ballard v. Schweiker*, 724 F.2d 1094, 1098 (4th Cir. 1984). However, in determining the appropriate fee in this case, this court is guided by the clear direction of the Fourth Circuit. *Doe*, 435 F.3d at 506 n.19. In footnote 19, the Fourth Circuit stated, "[i]n its recalculation, the district court should consider the *Johnson* factors on which it initially referenced in addition to the success obtained by Doe, including Doe's argument that his claim was partially vindicated, and that he is entitled to a substantial award under *Mercer v. Duke University*, 401 F.3d 199 (4th Cir. 2005)." *Doe*, 435 F.3d at 506 n.19.

The *Johnson* court listed several factors a district court should consider when awarding reasonable attorney's fees. *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). These factors include:

1) the time and labor required,
2) the novelty and difficulty of the questions,
3) the skill requisite to perform the legal services properly,
4) the preclusion of other employment by the attorney due to acceptance of the case,
5) the customary fee,
6) whether the fee is fixed or contingent,

-5-

7) time limitations imposed by the client or the circumstances,
8) the amount involved and the results obtained,
9) the experience, reputation and ability of the attorneys,
10) the "undesirability" of the case,
11) the nature and length of the professional relationship with the client, and
12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The Fourth Circuit stated that the most important factor in determining the reasonableness of a fee award is the degree of success obtained. *Doe*, 435 F.3d at 505 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). In *Farrar*, the United States Supreme Court explained that if a prevailing party has recovered only nominal damages, "the only reasonable fee is *usually* no fee at all." *Farrar*, 505 U.S. at 115. The Fourth Circuit added that it is unlikely that Doe may recover significant attorneys' fees since monetary damages were the ultimate objective of his suit and his suit was largely unsuccessful. *Doe*, 435 F.3d at 505.

When applying the *Johnson* factors in the court's 2004 opinion, the court accepted the submitted hourly rates as reasonable given the attorneys' experience, as well as the complexity and undesirability of the case. The court then adjusted the number of hours submitted by plaintiffs' attorneys in order to reflect the amount of work expended in the development and pursuit of only Buck Doe's claim. In this respect, the court reviewed the fee petitions in detail in order to locate those hours for which Buck Doe could recover. The task proved difficult, however, as many of the entries were poorly documented. Eventually, the court was able to decipher the subject matter of most entries by cross-referencing each fee petition with the other

and the docket.

Upon determining the subject matter of the entries, the court struck those entries involving unrelated or unsuccessful claims, such as the original claim by Robert Doe, the various motions to intervene by subsequent plaintiffs, the motion to consolidate the claims, the motion to certify plaintiffs as a class, the motion to hold the Secretary in contempt and the motion to amend the complaint and file affidavits. The court did, however, allow Buck Doe's attorneys to recover for their work in prosecuting and defending Buck Doe's cross-motion for summary judgment.

The Fourth Circuit found error in the above analysis by the court's failure to "give primary consideration to the amount of damages awarded as compared to the amount sought by Doe." *Doe*, 435 F.3d at 506. The court now notes that the primary objective of Buck Doe's lawsuit was to obtain monetary damages, as he entered the suit after the court had already issued a consent decree granting Robert Doe injunctive relief. Furthermore, subsection (g)(1)(D) of the Privacy Act does not allow courts to grant injunctive or declaratory relief; the Administrative Procedures Act, ("APA"), authorizes such equitable relief. *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004) (*Doe III*). However, because the Supreme Court upheld the Fourth Circuit's reversal of summary judgment for Buck Doe granting him statutory damages, Buck Doe collected no monetary relief. *See Doe III*, 540 U.S. at 614. The fact that Buck Doe collected no monetary damages when such relief was the primary purpose of his suit weighs against awarding attorneys' fees to Doe.

-7-

Nonetheless, Buck Doe argues that his claim was partially vindicated, and that he is entitled to a substantial award under *Mercer*. In *Mercer*, the Fourth Circuit utilized a three-prong test to determine whether a plaintiff in a Title IX action was entitled to attorney's fees despite receiving only nominal damages. *Mercer*, 401 F.3d at 205-10 (adopting framework set forth in Justice O'Connor's concurring opinion in *Farrar* for determining when a plaintiff's success is purely technical or de minimus, and, therefore, does not warrant attorney's fees). The *Mercer* court considered the extent of plaintiff's relief, the significance of the legal issue on which the plaintiff prevailed and the public purpose served by the litigation, and, ultimately, upheld the lower court's award of attorney's fees. *Mercer*, 401 F.3d at 205-10, 212.

The first factor the court must consider under the framework adopted in *Mercer* is the extent of the relief obtained by Doe. This inquiry is essentially identical to the analysis the court performed when applying the *Johnson* factors. The Fourth Circuit explained that it is not incumbent upon a district court to consider the most important relief to the plaintiff, as it must merely consider the relief sought. *Mercer*, 401 F.3d at 205. As stated above, Buck Doe received nothing in statutory damages despite monetary relief being the primary purpose of the suit. Thus, this factor weighs against an award of attorneys' fees to Doe.

The second factor the court must consider in its analysis is the significance of the legal issue on which the plaintiff prevailed. In this case, Doe was unsuccessful on his motion to hold the Secretary in contempt, and also, unsuccessful on the merits of his case. *See Doe III*, 540 U.S. at 614. In light of the fact that Doe did not succeed

Case 2:97-cv-00043-GMW-PMS Document 191 Filed 07/19/06 Page 8 of 12 Pageid#: 226

on a significant legal issue, this factor also weighs against an award of attorneys' fees to Doe.

The final factor the court must consider is whether the litigation served a public purpose, as opposed to simply vindicating the plaintiff's individual rights. Of utmost importance to the public, this litigation served to stop the Department's long-standing practice of disseminating claimants' social security numbers on black lung multi-captioned hearing notices. Five days after the original suit by Robert Doe was filed, the Secretary entered into an agreement stating that the Department would cease listing social security numbers on black lung hearing notices. The court approved and signed the agreement on February 20, 1997. While Buck Doe was not involved in these initial proceedings and did not file suit until after the agreement was entered, a year later, on behalf of he and the other Doe plaintiffs, plaintiffs' attorneys filed a Motion to Show Cause seeking to hold the Secretary in contempt for alleged continuing violations. At the contempt hearing, the Director of the Black Lung program testified that he saw no problem in disseminating social security numbers, and other ALJs testified to the effect that the decree was not being followed in all locations. The court found that the Secretary had substantially complied with its decree to stop publishing social security numbers on multi-captioned hearing notices, and, therefore, did not hold the Secretary in contempt. The court notes that its rationale for its decision was that the Secretary had made a reasonable effort to direct its personnel, including ALJs, to comply with the agreement.

However, the importance of the Motion to Show Cause and the time and

expenses incurred in preparing and arguing this motion cannot be underscored. The attorneys' efforts in pursuing the contempt order not only served the plaintiffs' interests but also those of the public at large. All present and future applicants for benefits under the Black Lung Benefits Act had an interest in the proceedings. Moreover, the fact that the contempt hearing was filed and prosecuted resulted in awakening the Secretary to the fact that its agreement to cease the practice of using social security numbers for identification was not being complied with by certain personnel, including ALJs who obviously knew of the agreement and the order of the court, but felt the need to continue the practice unabated. If indeed public value was obtained through the results of the plaintiffs' attorneys, it seems to the court that it would be unconscionable to disallow Buck Doe's attorneys' share. As such, the court is of the opinion that based on the third prong of the *Mercer* case, the pursuit of the Motion to Show Cause served an important public purpose, warranting an award of attorneys' fees for the time expended in pursuing the motion.

The court has requested plaintiffs' counsel to provide the court with the amount of time spent in preparing and prosecuting the contempt proceeding, but such information has not been forthcoming. Therefore, the court has siphoned out the best it could the hours claimed by Buck Doe at around the approximate time of the contempt hearing. In its previous opinion, the court calculated the amount of time the plaintiffs' attorneys devoted solely in pursuit of Buck Doe's suit. I will follow that analysis again. The court is of the opinion that Buck Doe should be entitled to one-seventh of the hours totally spent in prosecuting the contempt hearing, thus, allowing 33.64 hours in this regard. As to an hourly rate for the hours which the court is of

Case 2:97-cv-00043-GMW-PMS Document 191 Filed 07/19/06 Page 10 of 12 Pageid#: 228

the opinion would support a reasonable fee, the court has utilized the 12 factors set forth in the *Johnson* case and notes that in the Western District of Virginia, court-appointed criminal defense counsel are paid $90.00 per hour. This court usually allows as much as $175.00 per hour in ordinary social security cases, considering also that the court-appointed criminal defense cases are handled by younger and more inexperienced lawyers. Therefore, this court finds that $175.00 per hour is reasonable in light of the fact that this case is one-of-a-kind. This makes the amount of attorneys' fees to be awarded for the preparation and prosecution of the contempt motion $5,887.50. Moreover, I will award $5,000.00 in attorneys' fees for the appeal to the Fourth Circuit and $5,000.000 for the appeal to the United States Supreme Court, both of which appeals were solely for Buck Doe's claim. That makes the total award of attorneys' fees in this case $15,887.50. Unlike in my previous opinion, I will make this award only to Wolfe, Williams & Rutherford, since Joseph Wolfe appears to be chief counsel, and I will direct that the amount be divided among the other attorneys as they deem proper.

*IV. Conclusion*

For the foregoing reasons, I will award attorneys' fees to plaintiff Buck Doe as detailed above.

An appropriate order will be entered.

DATED: This 19th day of July 2006

_____
SENIOR UNITED STATES DISTRICT JUDGE

-12-